UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NIKOLAOS HANTZIS,            )<br>        Plaintiff                        )<br>v.                                          )<br>JETBLUE AIRWAYS CORPORATION )<br>AND MATTHEW RUSSO,     )<br>        Defendants.                  ) | PLAINTIFF'S COMPLAINT<br>AND DEMAND FOR TRIAL<br>BY JURY |

## I. INTRODUCTION

This action arises from the Plaintiff's employment with Defendant, JetBlue Airways Corporation. The Plaintiff was terminated in violation of public policy in response to his internal reports of violations of the State Building Code and other regulations governing workplace safety and security. Defendant Matthew Russo, the Plaintiff's supervisor, acted to effectuate the Plaintiff's termination in bad faith for his own personal reasons. The Plaintiff seeks damages, including compensatory damages for lost wages and emotional distress, based upon his wrongful discharge.

## II. PARTIES

1. The Plaintiff, Nikolaos Hantzis, is an individual residing in Atkinson, New Hampshire. At all times material hereto, Mr. Hantzis worked for JetBlue at Logan Airport in East Boston, Massachusetts.

2. Defendant, Jetblue Airways Corporation, is a business organized under the laws of Delaware with a principal place of business at 118-29 Queens Boulevard, Forest Hills, New York.

3. Defendant, Matthew Russo, is an individual residing in East Boston, Massachusetts.

## III. FACTS OF THE COMPLAINT

1

4. Mr. Hantzis began his employment with JetBlue in January of 2006. Prior to working for JetBlue, Mr. Hantzis had other airline industry experience, as well as a number of years in public service as a firefighter and Emergency Medical Technician.

5. For the next four years, Mr. Hantzis' tenure at JetBlue proceeded without incident. He showed himself to be a dedicated and conscientious employee, and he received numerous commendations from JetBlue and its business partners, including Massport.

6. In February of 2010, Mr. Russo, who had only recently been appointed to his supervisory position, escorted a company Vice President to areas of Logan Airport where Massport required a temporary visitors' pass for security purposes. Mr. Hantzis informed Doug Colmery and John Domenico about this incident, so that in the future, Mr. Russo would comply with the required security procedure to avoid any negative repercussions for JetBlue's failure to comply with security requirements.

7. After this incident, Mr. Russo became overtly hostile to Mr. Hantzis, making inappropriate workplace comments and even, in one bizarre incident, accusing Mr. Hantzis of stealing his sandwich from the office refrigerator.

8. On June 2, 2010, Mr. Hantzis made an internal harassment complaint to JetBlue's People Resources Department. He informed the company of Mr. Russo's negative treatment of him and forwarded communications and other evidence of the misconduct. JetBlue took no meaningful action in response to Mr. Hantzis'

complaint and failed to intervene or protect Mr. Hantzis from Mr. Russo's retribution in the workplace.

9. In or around early July, 2010, one of JetBlue's Business Partners asked Mr. Hantzis to cut a piece of plywood that was to be used for a safety rail at one of the airline's gates at C14. Mr. Hantzis knew that the wood was not permitted to be used for this purpose unless it was fire rated, and he notified Mr. Russo that JetBlue should obtain different, appropriate, wood for the project.

10. Nevertheless, after a number of conversations between Mr. Russo and Mr. Hantzis about the proper type of wood to use for the project, Mr. Russo instructed the Business Partner to go ahead and complete the work using non-compliant materials.

11. Mr. Hantzis again raised his concerns with company management and complained to Peter McManus about this issue. He also informed Mr. McManus that Mr. Russo insisted on having unlicensed personnel opening and working on "live" energized electrical panels.

12. During the same period of time, Mr. Russo instructed Mr. Hantzis to oversee the tracing and labeling of circuit panels.

13. Mr. Hantzis knew that, by law, only licensed electricians who obtain specific permits are allowed to open circuit panels. He reminded Mr. Russo of this requirement, and he made sure that JetBlue's Business Partners did not open any circuit panels while tracing the circuits. Mr. Hantzis also suggested to have licensed electricians come in to open up the circuit panels and perform more

accurate tracing. However, Mr. Russo blocked these efforts and angrily reprimanded Mr. Hantzis for 'failing to complete' this task.

14. Mr. Hantzis was especially concerned about the hazards of electrical panel work because an employee of one of JetBlue's contractors was electrocuted in the workplace and died in July of 2005.

15. The following month, Mr. Russo approved Mr. Hantzis' use of forty hours of paid time off during his workweek of August 20th through the 23rd.

16. Following Mr. Hantzis' return from leave, Mr. Russo suddenly reversed himself and took the position that Mr. Hantzis was only approved for twenty hours of vacation, and he told Mr. Hantzis on September 6, 2010, that he was going to "do something" about it. This was clearly retaliatory and in response to Mr. Hantzis' complaints of safety violations and illegal conduct by Mr. Russo.

17. Mr. Hantzis was stunned, especially because he had made sure to confirm Mr. Russo's verbal approval via email and had received no indication that any of his time off was unapproved before returning. All of Mr. Hantzis' colleagues at the terminal, including Mr. Russo, had his mobile telephone number, yet Mr. Russo did not call to inform him that the approved leave was retracted. In any event, Mr. Hantzis' shifts were covered, and he had received no communications from anyone at JetBlue, including Mr. Russo, to indicate that his absence was problematic in any way.

18. During this September 6th conversation, Mr. Russo became very agitated, and after a brief back-and-forth conversation between the two men, he angrily stormed

off.  At no time was there any physical contact between Mr. Russo and Mr. Hantzis nor did Mr. Hantzis threaten Mr. Russo in any manner whatsoever.

19. On September 10, 2010, Mr. Hantzis informed JetBlue's People Resources Department that he needed to take a few sick days off of work due to the enormous stress caused by Mr. Russo's mounting strategy of intimidation and harassment.

20. In response, Mr. Hantzis received a telephone call from Angel Torres and a three way call with Mr. McManus telling him that he was being suspended from work pending a hearing regarding the September 6th confrontation with Mr. Russo.  At the hearing, which took place on September 14th, Mr. Hantzis learned that Mr. Russo had falsely reported to JetBlue that Mr. Hantzis "assaulted" him and that he "feared for his life."  Not only did Mr. Hantzis go to great lengths to explain the many inconsistencies and incoherencies in Mr. Russo's version of events, but other employees echoed Mr. Hantzis' depiction.  The truth of the matter is that Mr. Russo was not touched and was never threatened in any way - which explains why he did not contact the police, file a police report, or report this alleged altercation to any other authorities as a result of his feigned apprehension.

21.  For approximately the next six weeks, Mr. Hantzis remained on suspension while JetBlue deliberated over a response to the September 6th incident.  During this time period, he repeatedly contacted the People Department for updates and to offer information, including names of witnesses, to help with JetBlue's investigation.  On or about October 25, 2010, Mr. Hantzis was informed that JetBlue had terminated his employment.

IV.    **COUNTS OF THE COMPLAINT**

## COUNT ONE

## <u>TERMINATION IN VIOLATION OF PUBLIC POLICY</u>

### *Hantzis v. Jetblue*

22. The Plaintiff restates and incorporates each paragraph of this Complaint as if fully stated herein.

23. The improper security procedures, construction of safety railing and unlicensed electrical work about which Mr. Hantzis complained constitute clear violations of Massachusetts law.  <u>See, e.g.</u>, *Board of Fire Prevention Regulations* at 527 CMR § 12.00; *Massachusetts Port Authority Regulations* at 740 CMR § 30.08; *State Building Code* at 780 CMR §§ 7.00, 8.00, 10.00, 23.00, 27.00, and 31.00 (including subsections).

24. Jetblue terminated Mr. Hantzis due to his internal complaints about violations of law.  Thus, Jetblue's action constitutes improper retaliation against Mr. Hantzis, a whistleblower under applicable common law protections.

25. Jetblue terminated Mr. Hantzis for complaining to management about what he reasonably believed were serious violations of law implicating public and workplace safety, and because he refused to participate or become complicit in illegal and potentially harmful practices.

26. As a result of the Defendant's actions, the Plaintiff has suffered damages.

## COUNT TWO

## **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

*Hantzis v. Russo*

27. The Plaintiff restates and incorporates each paragraph of this Complaint as if fully stated herein.

28. The Plaintiff's at-will contractual relationship with Jetblue constituted an advantageous business relationship, agreement or contract wherein the Plaintiff provided labor and services and the Defendant, Jetblue, provided compensation for the work conducted by the Plaintiff.

29. The Defendant, Mr. Russo has intimate and first-hand knowledge of the relationship and agreement between the Plaintiff and Jetblue.

30. The Defendant Mr. Russo knowingly, intentionally and improperly interfered with the Plaintiff's employment, contractual and business relationship with Jetblue maliciously, based on improper motive and in violation of applicable common law protected activity.

31. As a result of the Defendant's actions, the Plaintiff has suffered damages.

V.   **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays this Honorable Court to award the following relief:

1. Compensatory damages, including lost wages and emotional distress;

2. Prejudgment and post-judgment interest;

3. Costs of this action; and

4. Such further relief as it deems fair and just.

## VI. JURY DEMAND

The Plaintiff, Nikolaos Hantzis, hereby demands a TRIAL BY JURY as to each issue and claim so triable.

Respectfully submitted,
Nikolaos Hantzis
By his attorneys,

| | |
|---|---|
| */s/ David E. Belfort* | Dated: February 17, 2011 |

David E. Belfort (BBO# 634385)
Michael L. Mason (BBO# 662244)
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800
dbelfort@bennettandbelfort.com